Case 4:19-cr-00129   Document 8   Filed on 03/17/21 in TXSD   Page 1 of 20

United States Courts
Southern District of Texas
FILED

*March 17, 2021*

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal No. 19-129 |
| | * | |
| v. | * | |
| | * | Violations: |
| | * | 18 U.S.C. § 152(3) |
| MICHAEL ANDREW MCCANN | * | 18 U.S.C. § 371 |
| | * | 26 U.S.C. § 7212(a) |
| and | * | 26 U.S.C. § 7203 |
| | * | 18 U.S.C. § 1503 |
| TONI GALE ENGELING | * | |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES THAT:**

At times material to this Indictment:

## INTRODUCTION

1. **MICHAEL ANDREW McCANN** (hereinafter **McCANN**) owned and operated a dental practice in Brazoria, Texas.

2. **McCANN** was not married and lived in Lake Jackson and Brazoria, Texas.

3. **McCANN** had not filed a timely U.S. Individual Income Tax Return, Form 1040 (hereinafter Form 1040), since at least tax year 1999.

4. As of on or about the date of this indictment, **McCANN** had an outstanding federal income tax due and owing of approximately $879,133 for tax years 1997, 1998, 1999, 2003, 2004, and 2006.

5. Between in or about tax year 2014, and in or about tax year 2018, **McCANN** earned gross income of at least approximately $1,097,379.

1

6. **TONI GALE ENGELING** (hereinafter **ENGELING**), **McCANN**'s sister, worked as **McCANN**'s bookkeeper and assisted with his financial affairs.

7. **ENGELING** lived in Round Rock, Texas, and DeQuincy, Louisiana.

8. Brazoria Family Dentistry, PLLC, was a nominee used by **McCANN** for his dental practice.

9. Brazos Tech Management (hereinafter BTM) was a nominee used by and on behalf of **McCANN** to operate his dental practice and conduct his financial affairs.

10. BPM Associates, LLC (hereinafter BPM Associates), was a nominee used to operate **McCANN**'s dental practice and conduct **McCANN**'s financial affairs.

11. Bar None Farms, LLC (hereinafter Bar None Farms), was the name **McCANN** used for a ranch on which he kept livestock and other animals.

12. Dev, LLC, was a nominee used by **McCANN** to apply for loans.

13. BTL was the name used to open a bank account and post office box that **McCANN** used as his own.

14. MPB Management Group, LLC (hereinafter MPB), was a nominee used by **ENGELING** to receive payments from **McCANN**.

15. TLC Bookkeeping (hereinafter TLC) was a name used by **ENGELING** for a bookkeeping business and on invoices and emails sent to **McCANN**.

16. DD are the initials of a business for which **ENGELING** worked.

17. The Internal Revenue Service (hereinafter IRS) was and is an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the Treasury of the United States.

**IRS Actions Involving McCANN**

18. Beginning at least on or about September 26, 2001, through at least on or about February 5, 2014, the IRS sent notices and correspondence to **McCANN** and others, including banks, in attempts to collect **McCANN**'s federal income taxes due and owing for at least tax years 1996, 1997, 1998, 1999, 2003, 2004, and 2006.

19. On or about October 22, 2012, the IRS filed levies against financial accounts associated with **McCANN** in an attempt to collect his federal income taxes.

20. Between on or about December 13, 2012, through on or about February 5, 2014, the IRS sent **McCANN** four Notices of Public Auction Sale.

21. On or about March 10, 2014, the IRS sold real property owned by **McCANN,** at public auction, for partial payment of taxes due and owing by **McCANN**.

**COUNT ONE**
**18 U.S.C. § 152(3) -- McCANN**

22. On or about March 5, 2014, in the Southern District of Texas, the defendant,

**MICHAEL ANDREW McCANN**,

knowingly and fraudulently made material false declarations and statements, under the penalty of perjury, as permitted under Section 1746 of Title 28 of the United States Code, in and in relation to cases under Title 11 of the United States Code, specifically, In re Michael A. McCann, Case No. 14-80094 and In re Michael A. McCann, Case No. 14-31348, by filing and causing to be filed various Schedules with the Bankruptcy Court, on which he made false statements, including but not limited to, those described below.

    a.    On Schedule B, Personal Property (which required him to list all personal property of whatever kind): question 1, he had no cash on hand; question 2, he had no checking, savings or other financial accounts; question 24, he had no

    customer lists or other compilations containing personally identifiable information; and question 25, he had no automobiles, trucks, trailers, other vehicles and accessories; and

 b. on Schedule I, Current Income of Individual Debtor(s), line 7, he had zero regular income from operation of business, or profession or farm.

All in violation of Title 18, United States Code, Section 152(3).

## COUNT TWO
## 18 U.S.C. § 371 -- McCANN and ENGELING

23. Paragraphs numbered 1 through 7, 10, 11, and 14 through 19 are re-alleged and incorporated herein by reference.

24. Beginning in or about May 2010, and continuing until in or about October 2015, the exact dates being unknown to the Grand Jury, in the Southern District of Texas, and elsewhere, the defendants,

**MICHAEL ANDREW McCANN**

and

**TONI GALE ENGELING**,

did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: namely, **McCANN**'s individual income taxes.

**Manner and Means**

The defendants sought to accomplish the object of the conspiracy through the following manner and means, among others:

25. It was part of the conspiracy that defendants would use nominee entities to conduct **McCANN**'s financial affairs;

26. It was further part of the conspiracy that defendants would use bank accounts in the names of nominees to conduct **McCANN**'s financial affairs;

27. It was further part of the conspiracy that defendants would commingle **McCANN**'s personal and business income and expenses, including income and expenses of his dental practice and Bar None Farms;

28. It was further part of the conspiracy that defendants would use email and other means to communicate about **McCANN**'s financial affairs and IRS liabilities;

29. It was further part of the conspiracy that defendants would use signature stamps, including for **ENGELING**'s signature and the forged signature of their mother, whose initials were BPM, for documents and bank instruments, including checks;

30. It was further part of the conspiracy that defendants would process credit card payments for dental services through DD;

31. It was further part of the conspiracy that defendants would cause cash received in payment for dental services to be diverted directly to **McCANN**;

32. It was further part of the conspiracy that **McCANN** would withdraw cash from BPM Associates bank accounts for personal expenses, using, among other means, a bank card obtained by **ENGELING**;

33. It was further part of the conspiracy that defendants would send documents titled "Non-Negotiable Notices of Acceptance," "Notices of Dishonor," and "Certificates of Dishonor" to IRS employees assigned to collect **McCANN**'s taxes; and

34. It was further part of the conspiracy that defendants would lie to the IRS.

**Overt Acts**

In furtherance of the conspiracy, and to affect the object thereof, the defendants committed and caused to be committed the following overt acts, among others:

35. On or about May 7, 2010, **McCANN** and **ENGELING** added **ENGELING** as a signer on a BPM Associates bank account at The First State Bank in Louise, Texas, account number x8188 (hereinafter FSB account x8188).

36. On or about May 12, 2010, **McCANN** and **ENGELING** filed and caused to be filed, with the Texas Secretary of State, documents that designated **ENGELING** as a registered agent of BPM Associates in place of their mother, BPM, who died on May 11, 2010.

37. On or about May 13, 2010, **McCANN** and **ENGELING** added **ENGELING** as a signer on a BPM Associates bank account at BBVA Compass Bank in Lake Jackson, Texas, account number x1366 (hereinafter Compass account x1366).

38. On or about May 13, 2010, **ENGELING** applied for a bank card on behalf of BPM Associates that **McCANN** used for ATM withdrawals from Compass account x1366.

39. On or about July 23, 2011, **McCANN** sent and caused to be sent two documents, each titled "Non-Negotiable Notice of Acceptance," to the IRS Revenue Officer assigned to collect **McCANN**'s taxes (hereinafter the IRS RO).

40. On or about October 14, 2011, **McCANN** and **ENGELING** sent and caused to be sent two documents, each titled "Certificate of Dishonor," to the IRS RO.

41. On or about October 14, 2011, **McCANN** sent and caused to be sent two documents, each titled "Non-Negotiable Notice of Acceptance," to the IRS RO.

42. On or about March 27, 2012, **ENGELING** sent **McCANN** an email telling him to stamp her signature on a form for a wire transfer from FSB account x8188.

43. On or about April 4, 2012, **McCANN** sent and caused to be sent a document titled "Non-Negotiable Notice of Acceptance" to the IRS RO.

44. On or about May 12, 2012, **McCANN** sent and caused to be sent to the IRS RO, a document titled "Notice of Dishonor," in which **McCANN** claimed that his $81,113.92 tax debt was dishonored and that he would look to the IRS RO for "payment or performance."

45. Between at least on or about August 9, 2012, and at least on or about November 8, 2012, **ENGELING** submitted to **McCANN** at least 12 invoices from TLC for payment to **ENGELING** for financial services, and the invoices directed that payment be made by deposit into a Wells Fargo bank account, account number x8336, in the name of MPB.

46. On or about September 7, 2012, **McCANN** and **ENGELING** sent and caused to be sent a document titled "Certificate of Dishonor" to the IRS RO.

47. On or about September 28, 2012, **ENGELING** sent an email to **McCANN**'s office manager, whose initials are RG, explaining that **ENGELING** and **McCANN** were setting up a chart of accounts to re-categorize entries in previous years' financial statements.

48. On or about October 1, 2012, **ENGELING** sent **McCANN** an email asking him to call her to discuss an attached chart of accounts for his books.

49. On or about October 25, 2012, **ENGELING** called the IRS RO and made the following false statements, among others:

    a.     she was the owner of BPM Associates;

7

    b.        she routed all funds for numerous companies through the BPM Associates bank account that had been levied; and

    c.        there were several dentists who worked for BPM Associates.

50. On or about October 30, 2012, **McCANN** emailed **ENGELING** three IRS Notices of Levy, each dated October 22, 2012, with a tax liability of $2,624,116.90.

51. On or about March 28, 2013, **ENGELING** sent **McCANN** an email informing him that there should be approximately $5,900 cash in the cash drawer as of the end of February 2013.

52. On or about April 30, 2013, **ENGELING** sent **McCANN** an email regarding a number of dental patients claiming that credit card payments for dental services processed through DD's credit card system were fraudulent.

53. On or about October 9, 2013, **ENGELING** sent **McCANN** an email informing him that if he did work for and gave a bank account number to the Veterans Administration, the government would find that bank account and garnish it.

54. On or about November 20, 2013, **ENGELING** sent **McCANN** an email informing him, among other things, that:

    a.        she told RG that she "would pick up [her] signature stamps, checks and no one will be able to charge anything to the bank account but me;"

    b.        the petty cash is over $13,000; and

    c.        **McCANN** is "to get 100% of the petty cash to spend as [he] please[s] without reporting."

55. On or about August 27, 2014, **McCANN** made the following false statements, among others, to IRS special agents:

    a.        he kept no cash on hand;

8

  b.  BPM Associates was his deceased mother's estate;

  c.  BPM Associates operated as a holding company and income/expenses zero out; and

  d.  he did not receive any financial reports from **ENGELING** regarding BPM Associates.

56. On or about August 27, 2014, approximately $8,770 was transferred from FSB account x8188 into bank accounts controlled by **ENGELING**.

57. On or about February 12, 2015, **ENGELING** made the following false statements, among others, to IRS special agents that she:

  a.  never worked for **McCANN** but had a limited role as a bookkeeper;

  b.  only operated TLC for one month;

  c.  had no association with BPM Associates;

  d.  never created a signature stamp nor gave anyone consent to do so;

  e.  did not input any information into Quicken or QuickBooks for **McCANN** and did not create any of the income and expense categories;

  f.  never had a role in processing credit card payments; and

  g.  was never paid by **McCANN** for her services related to BPM Associates.

58. Between on or about January 2, 2015, and on or about October 21, 2015, **ENGELING** signed and caused to be signed every check written against FSB account x8188.

59. On or about October 21, 2015, **McCANN** made a cash withdrawal from FSB account x8188.

60. During in or about calendar year 2015, **McCANN** paid **ENGELING** approximately $10,200.

9

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
## 26 U.S.C. § 7212(a) -- McCANN

61. Paragraphs numbered 1 through 13, 16 through 22, 35 through 44, 46, 50 through 53, 54b, 55, and 59 are re-alleged and incorporated herein by reference.

### The Charge

62. Beginning on or about at least April 1, 2002, and continuing until and including on or about November 22, 2019, in the Southern District of Texas, and elsewhere, the defendant,

**MICHAEL ANDREW McCANN**,

knowing of and reasonably foreseeing IRS collection and enforcement actions, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws of the United States, that is, IRS collection and enforcement actions, by, among other things: (a) using nominee entities to conduct his financial affairs; (b) using nominees to open bank accounts; (c) filing false bankruptcy petitions to stop and delay IRS collection efforts; (d) signing and sending to the IRS false statements in lieu of tax returns; (e) making false statements to IRS employees; (f) sending correspondence to IRS employees baselessly disavowing his tax liability; (g) filing baseless personal lawsuits against IRS employees; (h) withdrawing cash from bank accounts for personal expenses; (i) using cash to purchase real property and for other expenses; (j) having others use cash to purchase money orders and cashier's checks for payments on real property; (k) using post office boxes in the name of others; (l) holding real property in the name of others; and (m) using signature stamps for documents and bank instruments.

Specifically, **McCANN** committed and caused to be committed various acts, each act having a nexus to pending or reasonably foreseeable collection and enforcement actions of the IRS, including but not limited to the following:

10

63. On or about April 1, 2002, in response to IRS correspondence dated February 6, 2002, March 22, 2002, and March 25, 2002, **McCANN** sent and caused to be sent correspondence to the IRS, in which he "Refused for Fraud" the February 6, 2002 and March 25, 2002 notices of tax due from the IRS for tax years 1997 and 1998.

64. On or about April 18, 2002, **McCANN** formed and caused to be formed Dev, LLC, in Leavenworth, Washington.

65. On or about October 2, 2002, **McCANN** filed and caused to be filed a baseless Application for Temporary Restraining Order and Temporary Injunction, in Brazoria County, Texas, against various IRS employees.

66. On or about October 21, 2002, **McCANN** sent and caused to be sent a letter to an IRS employee telling him that he had been sued.

67. On or about January 30, 2003, **McCANN** registered and caused to be registered Dev, LLC, as a foreign limited liability company doing business in Texas.

68. On or about December 13, 2004, **McCANN** formed and caused to be formed Bar None Farms with the Texas Secretary of State.

69. On or about January 20, 2005, **McCANN** formed and caused to be formed Brazoria Family Dentistry, PLLC, with the State of Texas, claiming his mother, BPM, was the registered agent and the managers were "Dr. Michael McCann, DDS" and "Bar None Farms, LLC."

70. On or about January 11, 2007, **McCANN** caused an individual whose initials are CH to file an Assumed Name Record in Brazoria County, Texas, for BTM.

71. On or about January 11, 2007, **McCANN** caused CH to open a bank account at Guaranty National Bank, account number x3451, using the name CH dba BTM.

11

72. On or about August 20, 2007, **McCANN** caused CH to open a post office box (number 1235) in the name of BTM.

73. On or about August 18, 2009, **McCANN** transferred and caused to be transferred his interest in real property to CH.

74. On or about August 28, 2009, **McCANN** gave CH cash and directed CH to purchase money orders totaling $11,224.81, for payment on real property.

75. On or about December 16, 2009, **McCANN** formed and caused to be formed BPM Associates with the Texas Secretary of State, claiming his mother, BPM, was the registered agent and organizer; and his son, whose initials are PM, was the manager.

76. On or about March 2, 2010, **McCANN** opened and caused to be opened FSB account x8188 using the forged signature for BPM.

77. On or about March 15, 2010, **McCANN** opened and caused to be opened Compass account x1366 using the forged signature for BPM.

78. On or about July 7, 2011, **McCANN** falsely stated to the IRS RO that he did not own or control any real property and that he did not have income.

79. On or about April 4, 2012, **McCANN** caused RG to purchase a $50,000 cashier's check (number 209314), using cash, at First National Bank of Lake Jackson in Brazoria, Texas, for payment on real property.

80. On or about December 19, 2012, in response to an IRS Notice of Public Sale of real property seized from **McCANN**, **McCANN** sent and caused to be sent frivolous correspondence to an IRS employee, in which, among other things, he demanded that the IRS restore that property or pay compensation to **McCANN**'s estate.

81. On or about February 4, 2013, the day before a scheduled IRS Public Auction of real property seized from **McCANN** (hereinafter public auction), **McCANN** filed for bankruptcy, Case No. 4:13-bk-30609, in the Houston Division of the Southern District of Texas, in order to stop and delay the sale, and **McCANN** later filed false bankruptcy schedules in the case.

82. On or about July 5, 2013, **McCANN** sent ten false Statements in Lieu of Tax Returns to the IRS for each of tax years 2003 through 2012.

83. On or about July 26, 2013, shortly before a public auction was scheduled to be held for the second time, **McCANN** filed for bankruptcy, Case No. 4:13-bk-34513, in the Houston Division of the Southern District of Texas, in order to stop and delay the sale, and **McCANN** later filed false bankruptcy schedules in the case.

84. On or about November 12, 2013, the day before a public auction was scheduled to be held for the third time, **McCANN** filed for bankruptcy, Case No. 3:13-bk-80466, with attached false schedules, in the Galveston Division of the Southern District of Texas, in order to stop and delay the sale.

85. On or about March 5, 2014, a few days before a public auction was scheduled to be held for the fourth time, **McCANN** filed two bankruptcy petitions, both with attached false schedules, in the cases described below, in order to stop and delay the sale:

   a. Case No. 3:14-bk-80094, in the Galveston Division of the Southern District of Texas; and

   b. Case No. 4:14-bk-31348, in the Houston Division of the Southern District of Texas.

86. On or about August 27, 2014, knowing he was under criminal investigation, **McCANN** made the false statements described in Paragraph 55 herein to IRS special agents.

87. During in or about tax year 2014, **McCANN** made withdrawals totaling approximately $38,700 from FSB account x8188.

88. On or about October 14, 2015, **McCANN** caused an individual whose initials are CSH to file an Assumed Name Record in Brazoria County, Texas, for BPM Associates.

89. On or about October 15, 2015, **McCANN** opened and caused to be opened a bank account at First National Bank of Lake Jackson, account number x4640 (hereinafter FNB x4640), using the name CSH, dba BPM Associates.

90. On or about October 15, 2015, **McCANN** opened and caused to be opened a post office box (number 945) in Brazoria, Texas, using the name BTL Consultants.

91. During in or about tax year 2015, **McCANN** made withdrawals totaling approximately $49,510 from FSB account number x8188 and FNB account number x4640.

92. On or about September 1, 2016, **McCANN** opened and caused to be opened a bank account at First National Bank of Lake Jackson, in Brazoria, Texas, account number x4799, using the name of an individual whose initials are CZ, dba BTL (hereinafter FNB account x4799).

93. During in or about tax year 2016, **McCANN** made withdrawals totaling approximately $42,030 from FNB accounts x4640 and x4799.

94. On or about January 4, 2017, **McCANN** updated and caused to be updated the signature card for FNB account x4640, in the name CSH, dba BPM Associates, to include his deceased mother's forged signature.

95. During in or about tax year 2017, **McCANN** made withdrawals totaling approximately $39,790 from FNB accounts x4640 and x4799.

14

96. On or about January 16, 2018, **McCANN** wrote a check on FNB account x4640, payable to himself for $1,000 and signed it using his deceased mother's forged signature.

97. On or about February 8, 2018, **McCANN** wrote a check on FNB account x4640, payable to himself for $1,400 and signed it using his deceased mother's forged signature.

98. During in or about tax year 2018, **McCANN** made withdrawals totaling approximately $23,440 from FNB accounts x4640 and x4799.

99. On or about November 22, 2019, **McCANN** caused CSH to file an Assumed Name Record in Brazoria County, Texas, for BPM Associates.

All in violation of Title 26, United States Code, Section 7212(a).

## COUNT FOUR
## 26 U.S.C. § 7203 -- McCANN

100. Paragraphs numbered 1 through 7, 10, 15, 17, 18, 35, 36, 55, 75, 76, 86, and 87 are re-alleged and incorporated herein by reference.

101. During the calendar year 2014, the defendant,

**MICHAEL ANDREW McCANN**,

had and received gross income in excess of $11,700. By reason of such gross income, **McCANN** was required by law, following the close of the calendar year 2014 and on or before April 15, 2015, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, or to the person assigned to receive returns at the local office of the IRS, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, **McCANN** did willfully fail, on or about April 15, 2015, in the Southern District of Texas and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

**COUNT FIVE**
**26 U.S.C. § 7203 -- McCANN**

102. Paragraphs numbered 1 through 7, 10, 17, 18, 35, 36, 59, 60, 75, 76, and 88 through 91 are re-alleged and incorporated herein by reference.

103. During the calendar year 2015, the defendant,

**MICHAEL ANDREW McCANN**,

had and received gross income in excess of $11,850. By reason of such gross income, **McCANN** was required by law, following the close of the calendar year 2015 and on or before April 18, 2016, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, or to the person assigned to receive returns at the local office of the IRS, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, **McCANN** did willfully fail, on or about April 18, 2016, in the Southern District of Texas and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

**COUNT SIX**
**26 U.S.C. § 7203 -- McCANN**

104. Paragraphs numbered 1 through 5, 10, 13, 17, 18, 88, 89, 92, and 93 are re-alleged and incorporated herein by reference.

105. During the calendar year 2016, the defendant,

**MICHAEL ANDREW McCANN**,

had and received gross income in excess of $11,900. By reason of such gross income, **McCANN** was required by law, following the close of the calendar year 2016 and on or before April 18, 2017, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, or to the person assigned to receive returns at the local office of the IRS, or to another IRS office

permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, **McCANN** did willfully fail, on or about April 18, 2017, in the Southern District of Texas and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## COUNT SEVEN
## 26 U.S.C. § 7203 -- McCANN

106. Paragraphs numbered 1 through 5, 10, 13, 17, 18, 88, 89, 92, 94, and 95 are re-alleged and incorporated herein by reference.

107. During the calendar year 2017, the defendant,

**MICHAEL ANDREW McCANN**,

had and received gross income in excess of $11,950. By reason of such gross income, **McCANN** was required by law, following the close of the calendar year 2017 and on or before April 17, 2018, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, or to the person assigned to receive returns at the local office of the IRS, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, **McCANN** did willfully fail, on or about April 17, 2018, in the Southern District of Texas and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## COUNT EIGHT
## 26 U.S.C. § 7203 -- McCANN

108. Paragraphs numbered 1 through 5, 10, 13, 17, 18, 88, 89, 92, 94, and 96 through 98 are re-alleged and incorporated herein by reference.

109. During the calendar year 2018, the defendant,

**MICHAEL ANDREW McCANN**,

had and received gross income in excess of $13,600. By reason of such gross income, **McCANN** was required by law, following the close of the calendar year 2018 and on or before April 15, 2019, to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, or to the person assigned to receive returns at the local office of the IRS, or to another IRS office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, **McCANN** did willfully fail, on or about April 15, 2019, in the Southern District of Texas and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## COUNT NINE
## 18 U.S.C. § 1503 -- ENGELING

110. Paragraphs numbered 1 through 7, 10, 14 through 17, 25 through 32, 42, 45, 47, 48, 50 through 54, 58, and 60 are re-alleged and incorporated herein by reference.

111. On or about September 4, 2019, in the Southern District of Texas, the defendant,

**TONI GALE ENGELING**,

corruptly influenced, obstructed and impeded or endeavored to influence, obstruct and impede the due administration of justice by knowingly and willfully making false and misleading declarations before a federal grand jury sitting in the Southern District of Texas, by, among other things, making false material declarations and misleading statements, with regard to matters that were material to the Grand Jury and with the intent to obstruct and impede the Grand Jury's investigation of Michael A. McCann.

All in violation of Title 18, United States Code, Section 1503.

## COUNT TEN
## 18 U.S.C. § 152(3) -- McCANN

112. Paragraphs numbered 1, 2, 10, 11, 13, 35 through 37, 76, 78, 88 through 90, 92, 94, 96 through 98, and 109 are re-alleged and incorporated herein by reference.

113. On or about October 17, 2018, in the Southern District of Texas, the defendant,

**MICHAEL ANDREW McCANN**,

knowingly and fraudulently made material false declarations and statements, under the penalty of perjury, as permitted under Section 1746 of Title 28 of the United States Code, in and in relation to cases under Title 11 of the United States Code, specifically, In re Michael A. **McCANN**, Case No. 18-33152, by filing and causing to be filed various Schedules with the Bankruptcy Court, on which he made false statements, including but not limited to, those described below:

    a.    On Schedule A/B, Property: question 17, he had only one checking account, at Wells Fargo, valued at $100.00;

    b.    On Schedule I, Your Income: line 8a, he had zero monthly income from operation of business, profession, or farm; and

    c.    On Statement of Financial Affairs for Individuals Filing for Bankruptcy, Official Form 107: question 9, he was party to only one lawsuit within one year before filing for bankruptcy; and question 27, he did not own a business within four years before filing for bankruptcy.

All in violation of Title 18, United States Code, Section 152(3).

A TRUE BILL

**Original Signature on File**

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF TEXAS

DAVID A. HUBBERT
ACTING ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION

BY: _____
Mitchell T. Galloway
Trial Attorney, Tax Division

_____
Jen Ihlo
Senior Litigation Counsel, Tax Division